IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DIGI PORTAL LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-1010 (MN) |
| | ) |
| THRYV, INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT THRYV, INC.'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL
<u>RULES OF CIVIL PROCEDURE AND 35 U.S.C. § 101</u>**

OF COUNSEL:

Jason Mueller
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
2200 Ross Avenue, 24th Floor
Dallas, TX 75201
(469) 391-7400
jmueller@sheppardmullin.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
Andrew M. Moshos (#6685)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@mnat.com
amoshos@mnat.com

*Attorneys for Defendants*

December 14, 2020

# TABLE OF CONTENTS

**Page**

I.   THE '227 PATENT DOES NOT CONTAIN THE ALLEGEDLY "INVENTIVE CONCEPTS" FROM THE CACHE PATENTS ...................................................... 2

II.   JUDGE STARK DID NOT CONFIRM THE '854 PATENT'S ELIGIBLITY ...... 3

    A.   Thryv correctly characterizes the abstract idea. ............................................ 4

    B.   Digi Portal fails to distinguish *Versata*, which found similar claims ineligible. .................................................................................................... 5

    C.   Developments in § 101 law support a finding that the claims are ineligible. .................................................................................................... 7

III.  DIGI PORTAL RELIES ON CASES THAT ARE DISTINGUISHABLE ............ 8

IV.  THE '854 PATENT IS REPRESENTATIVE OF THE CACHE PATENTS ......... 9

V.   PROSECUTION HISTORY AND SOURCE CODE DO NOT HELP DIGI PORTAL ................................................................................................................ 10

VI.  CONCLUSION ...................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ................................................................................................... 3, 4

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
    778 F. App'x 882 (Fed. Cir. 2019) ........................................................................................ 7

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) ........................................................................................ 4, 5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ............................................................................................ 9

*Customedia Techs., LLC v. Dish Network Corp.*,
    No. 2018-2239, 2020 WL 1069742 (Fed. Cir. Mar. 6, 2020) ........................................... 2, 7

*Data Engines Techs. LLC v. Google LLC*,
    906 F.3d 999 (Fed. Cir. 2018) .............................................................................................. 6

*DDR Holdings, LLC v. Hotels.com, L.P.*
    773 F.3d 1245, 1257 (Fed. Cir. 2014) .................................................................................. 8

*Digi Portal LLC v. Hilton Worldwide Holdings, Inc.*,
    No. 20-863-MN (D. Del.) ..................................................................................................... 1

*Digi Portal, LLC v. Quotient Tech Inc.*,
    C.A. No. 18-1485-LPS-CJB, 2019 WL 2904670 (D. Del. July 5, 2019) ........................ 1, 5

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ............................................................................................ 8

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d1327 (Fed. Cir. 2016) ............................................................................................ 4

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) ............................................................................................ 9

*Jedi Tech., Inc. v. Spark Networks, Inc.*,
    No. 1:16-1055-GMS, 2017 WL 3315279 (D. Del. Aug. 3, 2017) ...................................... 10

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
    942 F.3d 1143 (Fed. Cir. 2019) ............................................................................................ 8

*SAP America, Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) .......................................................................................... 10

*Versata Software, Inc. v. NetBrain Techs., Inc.*,
  C.A. No. 13-676-LPS-CJB, 2015 WL 5768938 (D. Del. Sept. 30, 2015) ......................... 5, 6, 7

*Visual Memory LLC v. NVIDIA Corp.*,
  867 F.3d 1253 (Fed. Cir. 2017) ........................................................................................ 8, 9

*WhitServe LLC v. Donuts Inc.*,
  809 F. App'x 929 (Fed. Cir. 2020), *cert. denied*, No. 20-325, 2020 WL
  6701095 (U.S. Nov. 16, 2020) ......................................................................................... 2, 8

*WhitServe LLC v. Dropbox, Inc.*,
  No. 18-665-CFC, 2019 WL 3342949 (D. Del. July 25, 2019) ....................................... 3, 8, 9

**TABLE OF ABBREVIATIONS**

| Term | Abbreviated Term |
|---|---|
| Digi Portal | Plaintiff Digi Portal LLC |
| Thryv | Defendant Thryv, Inc. |
| '227 Patent | U.S. Patent No. 5,983,227 |
| '854 Patent | U.S. Patent No. 8,352,854 |
| '414 Patent | U.S. Patent No. 7,171,414 |
| '359 Patent | U.S. Patent No. 7,565,359 |
| '342 Patent | U.S. Patent No. 9,626,342 |
| Cache Patents | Collectively, the '854 Patent, the '414 Patent, the '359 Patent and the '342 Patent |
| Patents-in-Suit | Collectively, the '227 Patent, the '854 Patent, the '414 Patent, the '359 Patent and the '342 Patent |

Defendant Thryv, Inc.'s ("Thryv") Motion to Dismiss (D.I. 11) joined in Hilton Worldwide Holdings, Inc.'s ("Hilton") motion to dismiss and incorporated by reference Hilton's opening brief in support thereof. *Digi Portal LLC v. Hilton Worldwide Holdings, Inc.*, No. 20-863-MN, D.I. 10, 11 (D. Del.).[1] The *Hilton* case involves the same plaintiff, Digi Portal LLC ("Digi Portal"), and the same asserted patents and claims as this case. D.I. 11 at 1. Before Hilton's deadline to file its reply brief in support of its motion to dismiss, the parties in *Hilton* filed a stipulation to stay all deadlines and provided a notice of settlement (No. 20-863-MN, D.I. 24). Thryv now submits this Reply in support of its Motion to Dismiss.

Digi Portal is under the mistaken impression that Judge Stark's prior decision in *Digi Portal, LLC v. Quotient Tech Inc.*, C.A. No. 18-1485-LPS-CJB, 2019 WL 2904670 (D. Del. July 5, 2019) (hereinafter *Stark Op.*), denying a motion to dismiss one of the five Patents-in-Suit here (the '854 Patent) under 35 U.S.C. § 101 should control. Digi Portal ignores that Judge Stark did not rule on the eligibility of any claim from the other four Patents-in-Suit here, which were not at issue in the *Quotient* case, and, importantly, explicitly left the door open for a court to find the '854 Patent's claims ineligible. *Stark Op.* at *2 ("it may be possible that claim 1 [of the '854 Patent] could be accurately characterized as directed to some abstract idea").

Digi Portal also fails to acknowledge that § 101 law has further developed since Judge Stark's decision. The Federal Circuit held earlier this year that claims purportedly improving a computer's "ability to store advertising data [and] transfer data at improved speeds" were merely an improvement of the abstract idea "of delivering targeted advertising [and] using a computer only as a tool." *Customedia Techs., LLC v. Dish Network Corp.*, No. 2018-2239, 2020 WL

---

[1] For ease of reference, the briefing in *Digi Portal v. Hilton* (No. 20-863-MN) has been attached to this Reply. *See* Ex. A, Hilton's Opening Brief; Ex. B, Digi Portal's Answering Brief.

1069742, at *2–3 (Fed. Cir. Mar. 6, 2020); *see also WhitServe LLC v. Donuts Inc.*, 809 F. App'x 929, 933 (Fed. Cir. 2020), *cert. denied*, No. 20-325, 2020 WL 6701095 (U.S. Nov. 16, 2020) ("[U]se of standard computers and networks to carry out those functions—more speedily, more efficiently, more reliably—does not make the claims any less directed to that abstract idea."). Despite the citation to *Customedia* seven times in Hilton's opening brief, Digi Portal's opposition neither references it nor attempts to distinguish it.

In short, the Patents-in-Suit are all directed to an abstract idea: the '227 Patent is directed to providing customized information to a user, and the Cache Patents are directed to providing customized information to a user from the most convenient location. Neither idea is new, and the addition of standard computing methods to purportedly add speed and efficiency to the process do not add an inventive concept. Digi Portal's attempt to argue otherwise does not shelter its claims from ineligibility.

**I. THE '227 PATENT DOES NOT CONTAIN THE ALLEGEDLY "INVENTIVE CONCEPTS" FROM THE CACHE PATENTS**

The '227 Patent claims less than the Cache Patents. Notably absent, and undisputed by Digi Portal, are the supposed "inventive concepts" that previously guarded the '854 Patent and upon which Digi Portal so heavily relies: advertising or storing templates in more than one place, and determining that location based on frequency of use or using a shared memory. The '227 Patent is thus a simpler version of the Cache Patents directed to the same abstract idea of providing customized information to a user. Digi Portal argues that this abstract idea "fails to address the problems of serving dynamically generated web pages." (Ex. B at 17.) The '227 Patent, argues Digi Portal, "combin[es] user preferences and a template to form a unique user template program, which is different from a generic template." (*Id.*) Rather than differentiate the '227 Patent's claims from the abstract idea, Digi Portal's characterization is synonymous with the abstract idea of

2

providing customized information to a user.  Indeed, it is impossible to separate the claims from the abstract idea.

The whole of the '227 Patent's claims is directed to filling in a template, a basic human function, and provides no inventive way of doing so.  *WhitServe LLC v. Dropbox, Inc.*, No. 18-665-CFC, 2019 WL 3342949, at *6 (D. Del. July 25, 2019) (finding "nothing inventive" in "a well-understood practice of human organization").  Notwithstanding Digi Portal's attempt to disguise the underlying abstract idea of the '227 Patent through its over-technical analysis, the '227 Patent's claims use computers to implement the abstract idea of providing customized information to a user and is therefore not patent eligible.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2351 (2014).

## II. JUDGE STARK DID NOT CONFIRM THE '854 PATENT'S ELIGIBLITY

Judge Stark left open the issue of the '854 Patent's eligibility, finding only that the asserted claims were not directed to the abstract idea articulated by the defendant in that case:

> While it may be possible that **claim 1 could be accurately characterized as directed to some abstract idea**, all I need to decide today is that the claim is not directed to the abstract idea articulated by defendant.

*Stark Op.* at *2 (emphasis added). That ruling does not confirm the eligibility of the '854 Patent's claim, but indeed acknowledges the opposite, that it "could be accurately characterized as directed to some abstract idea" which is accomplished below.

Digi Portal ignores this crucial portion of the opinion.  Judge Stark did not hold "that the claims had two inventive concepts," (Ex. B at 1), but only found that (1) the previous "defendant oversimplified the abstract idea" and (2) also failed to meet its burden at *Alice* step two based on the record in that case. *Stark Op.* at *2.  In fact, Judge Stark's comments regarding step two may be characterized as dicta, as he had already decided to deny the motion because the defendant had

3

failed to satisfy step one. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d1327, 1339 (Fed. Cir. 2016) ("Because the claims are not directed to an abstract idea . . . we do not need to proceed to step two" unless there are "close calls" about step one. (citation omitted)).[2]

Admittedly, the court did identify an inventive concept in a single limitation of the '854 Patent, but that was "based on the record" in front of it. *Stark Op*. at *2. The Court is presented with a new record here: (1) a different abstract idea articulated by the '854 Patent's claims; (2) key precedent addressing this abstract idea, which Digi Portal fails to meaningfully address; and (3) developments in § 101 law since Judge Stark's ruling.

### A.    Thryv correctly characterizes the abstract idea.

The record is different here because Thryv correctly characterizes the abstract idea to which the Cache Patents, including the '854 Patent, are directed: providing customized information to a user from the most convenient location. The *Quotient* defendant argued instead that the '854 Patent's claims were directed to "providing targeted information, including advertising to a user." *Stark Op*. at *2. Digi Portal tries to discredit the abstract idea set forth by Thryv by stating it "merely combin[es] the previously rejected abstract idea with the inventive concepts." (Ex. B at 10.)  This argument misses the mark, since "[i]t has been clear since *Alice* that a claimed invention's *use* of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (emphasis added).  Digi Portal is wrong as a matter of law because a claimed use of an ineligible concept does not render claims eligible.

---

[2] Whether Judge Stark identified one or two inventive concepts is also unclear.  *Stark Op*. at *2 ("the inventive concept" v. "[t]hese inventive concepts").

Digi Portal further argues that Thryv "misunderstands the invention" because "[t]he claim is not directed to providing information 'from the most convenient location.'" Ex. B at 11. Digi Portal argues that the claim in fact allows information to be retrieved from a *less* convenient location. *Id.* However, Digi Portal's uses the wrong frame of reference here. In the very next sentence, Digi Portal espouses the "less convenient location" as a benefit because it is a backup "if [the information] is no longer available at another location." *Id.* The correct comparison point for this second, less convenient location is no location at all. Therefore, the location from which the information is provided for the customer is in fact the most convenient location, and Thryv, not Digi Portal, correctly characterizes the invention.

### B. Digi Portal fails to distinguish *Versata*, which found similar claims ineligible.

The record is again different because the parties to *Digi Portal v. Quotient* did not identify *Versata Software, Inc. v. NetBrain Techs., Inc.*, C.A. No. 13-676-LPS-CJB, 2015 WL 5768938 (D. Del. Sept. 30, 2015) in their briefing. Judge Stark therefore appears to have not considered this decision in his previous opinion. *Stark Op*. And now, Digi Portal fails to distinguish *Versata*.

Digi Portal sets forth a single, conclusory sentence in its failed attempt to distinguish Judge Burke's decision in *Versata*, which analyzed and found patent ineligible claims similar to those in the Cache Patents. 2015 WL 576893 at *4–11, *20–22. The relevant *Versata* patent, like the Cache Patents, allegedly solved problems surrounding the "inefficiency" of producing "dynamic web page content" by creating a "framework that allows for the caching and reuse of dynamically created documents in an efficient manner, thereby reducing the amount of computation required by web and/or application servers." *Compare id.* at *20–21 *with* '854 Patent at 4:7–11. The relevant claim in *Versata* required "receiving a file request that includes state information based on user selections . . ., retrieving the file if it already exists or creating a new file (and storing it for

5

later recycling), and transmitting the file to the user—broad steps that simply automate an existing fundamental concept through the application of conventional and generic computer systems and components." *Versata*, 2015 WL 5768938, at *22 (citations omitted). The Cache Patents are no different.

Indeed, Digi Portal makes the same arguments at step one that failed in *Versata*. There, Judge Burke characterized the invention as an "idea of receiving a request for information and transmitting a response by either recycling old information or collecting the requested information into a new file that will be stored—in other words, a system meant to avoid reinventing the wheel every time a new request is received." *Versata*, 2015 WL 5768938, at *21. Digi Portal fails to distinguish the Cache Patents' claims from "this . . . fundamental concept . . . that people have been doing with or without computer-based help for years." *Id.* (collecting cases). Digi Portal dismisses Thryv's store analogy by lumping it in with a different analogy purportedly considered by Judge Stark. Ex. B at 13. But Thryv's analogy "consider[s] the claim as a whole," and Digi Portal dismisses the analogy without explaining what limitations are missing. *Data Engines Techs. LLC v. Google LLC*, 906 F.3d 999, 1101 (Fed. Cir. 2018).

Digi Portal also makes the same arguments at step two that failed in *Versata* by making the claims appear much more technical than they are. Its purported support for the claims' eligibility comes mainly from the Cache Patents' "Summary of the Invention" section, exemplary source code, and Judge Stark's ruling. But Digi Portal cannot argue that the claimed invention implements anything other than the generic components from the specification (server, RAM, etc.). The specification sparsely discusses the supposed "inventive concepts": (1) storing and retrieving live data from "shared memory as compared with using servers and [a] page template" and (2) storing the user template in cache. '854 Patent at 4:22–26, 5:23–27. The claims here are

6

"devoid of any meaningful limitations" beyond those found ineligible in *Versata* or improving upon the abstract idea itself. *Versata*, 2015 WL 5768938, at *22.

### C. Developments in § 101 law support a finding that the claims are ineligible.

The record is different here because decisions on patent eligibility from the Federal Circuit and courts in this District made since Judge Stark's *Quotient* decision support a finding that the Cache Patents claim ineligible subject matter. For example, the Federal Circuit, in one of its recent § 101 decisions, affirmed the ineligibility of two patents claiming "reserving memory to ensure storage space is available for at least some" data, specifically advertising. *Customedia*, 2020 WL 1069742, at *4. The patentee argued that "providing a reserved and dedicated section of storage . . . improves the data delivery systems ability to store" and "transfer data at improved speeds and efficiencies . . . ." *Id.* at *2. The Federal Circuit held that this does not "improve the functionality of the computer," but rather "merely improves the abstract concept . . . ." *Id.* at *3. Digi Portal asserts that the Cache Patents, like those in *Customedia*, improve the efficiency and scalability of web pages by reserving storage for a template program. (Ex. B at 13-14.) But according to the Federal Circuit's holding, reserving memory for specific data is not "an improvement to the functionality of the computer," but rather an improvement to the abstract concept, which in this case is providing targeted information from the most convenient location. *Customedia* at *4; see also Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 884, 887 (Fed. Cir. 2019) (claims for "tracking a user's computer network activity . . . to deliver targeted media" were merely "a computer-implementation of targeted marketing over the Internet" and thus ineligible).

Digi Portal alleges that the claims are inventive because "[s]toring information in two location [sic] allows for a quick recovery if one storage location crashes" and retrieval "is

7

determined by the frequency of the user request for the customized page." (Ex. B at 15.) A court in this District recently found, however, that these features are decidedly abstract and not inventive:

> This is the scenario where humans secure critical documents . . . in a bank safe deposit box, but keep a copy at home for quick reference when needed. Similarly, every lawyer who has downloaded a document from the court's case docket on CM/ECF and saved the copy to their local computer has used the internet to create an onsite backup copy of offsite data that comes in handy on those days when CM/ECF is not accessible or convenient.

*WhitServe*, 2019 WL 3342949, at *6. The Cache Patents are directed to the same matter as the *WhitServe* patent and are therefore "not directed to an improvement in computer functioning"—they are patent ineligible. *Id.* at *7. And any improvement in speed or efficiency of the abstract idea Digi Portal claims does not confer eligibility. *See WhitServe v. Donuts*, 809 F. App'x at 933.

### III. DIGI PORTAL RELIES ON CASES THAT ARE DISTINGUISHABLE

Digi Portal cites several cases for its argument that the claims are not abstract because they are necessarily rooted in computer technology. *See, e.g.*, *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1151 (Fed. Cir. 2019); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1257 (Fed. Cir. 2017); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016). That is not the case here. The abstract idea of storing a document, template or file in more than one location for ease of access is not new nor necessarily limited to computer technology. The Cache Patents are ineligible for failing to provide an inventive concept or claim anything beyond the abstract idea of providing customized information to a user and serving that information from the most convenient location.

This case is unlike *DDR Holdings, LLC v. Hotels.com, L.P.*, where "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." 773 F.3d 1245, 1257 (Fed. Cir. 2014). The court in that case distinguished problems "necessarily rooted in computer technology" from claims that "recite the

performance of some business practice known from the pre-internet world." *Id.* at 1257. The '854 Patent is the latter, as evidenced by the fact that it describes improvements for scaling custom server responses by implementing the abstract idea of providing customized information to a user from the most convenient location. The Cache Patents do not offer anything more than the "well-understood practice" of backing up data and storing a copy "for quick reference when needed." *WhitServe*, 2019 WL 3342949, at *6. The claims are thus ineligible unlike those held to be eligible.

## IV. THE '854 PATENT IS REPRESENTATIVE OF THE CACHE PATENTS

Digi Portal argues that the '854 Patent is not representative of the Cache Patents, but its arguments are not grounded in law. Digi Portal argues that the '414 and '359 Patents require storing real-time information in shared local storage and a user-specific template program, and that the '342 Patent requires the use of real-time information in a user template program along with generating the program from a global generic template. (Ex. B at 16.) Digi Portal argues these are not inconsequential because they relate to the improvement of "eliminating the need to make requests to other servers." *Id*. This argument misses the mark.

Claims are representative where they are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). The above limitations do not change the simple fact that all of the Cache Patents are linked to the same abstract idea: providing customized information to a user from the most convenient location. Simple narrowing of the claims, using conventional functions of computers does not separate a claim from the representative claim. *Id.* at 1349. While Digi Portal argues the narrowing through the addition of real-time information and user specific templates limits these claims further than the '854 Patent, it does not show that the claims are inventive and not directed to the same abstract idea. *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1365 (Fed. Cir. 2015) ("[M]erely adding computer functionality

9

to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea."). Claim 1 of the '854 Patent is therefore representative of the Cache Patents.

## V. PROSECUTION HISTORY AND SOURCE CODE DO NOT HELP DIGI PORTAL

Digi Portal cites to the prosecution history to supposedly show that the USPTO sanctioned what Digi Portal alleges are the "inventive concepts." But this prosecution history only addresses overcoming §§ 102 and 103 rejections. (Ex. B at 6-7, citing Exs. C–F, H–J, L to Ex. B.) The focus here is on the claims and specification only. This Court "may assume that the techniques claimed are groundbreaking, innovative, or even brilliant, but that is not enough for eligibility." *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (citations and internal quotations omitted).

Furthermore, the source code attached as Appendices A and B to the Asserted Patents are merely exemplary codes. The patentee used these codes to create "an illustration of [a] user template as might be generated from [a] global user template and a user configuration record" and "an illustration of a user front page returned by [a] page server." '854 Patent at 5:20–22, 56–57. This code is not claimed, further showing that these claims attempt to encompass the entire abstract idea of providing customized information to a user from the most convenient location.

## VI. CONCLUSION

Digi Portal does not identify any disputed questions of fact (because there are none) or any claim construction issues that would prohibit resolving the issue of eligibility at Rule 12. *See Jedi Tech., Inc. v. Spark Networks, Inc.*, No. 1:16-1055-GMS, 2017 WL 3315279, at *6 (D. Del. Aug. 3, 2017) (ruling on § 101 at Rule 12(b)(6) stage because plaintiff failed to specifically identify factual or claim construction disputes). This motion is thus ripe for the Court's consideration and Thryv respectfully requests that the Court dismiss Digi Portal's Complaint.

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
|  | */s/ Andrew M. Moshos* |
|  |  |
|  | Brian P. Egan (#6227) |
|  | Andrew M. Moshos (#6685) |
|  | 1201 North Market Street |
| OF COUNSEL: | P.O. Box 1347 |
|  | Wilmington, DE  19899 |
| Jason Mueller | (302) 658-9200 |
| SHEPPARD MULLIN RICHTER & HAMPTON | began@mnat.com |
| LLP | amoshos@mnat.com |
| 2200 Ross Avenue, 24th Floor |  |
| Dallas, TX 75201 | *Attorneys for Defendant* |

December 14, 2020

11

**CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 14, 2020, upon the following in the manner indicated:

| | |
|---|---|
| Jimmy Chong, Esquire<br>CHONG LAW FIRM P.A.<br>2961 Centerville Road<br>Suite 350<br>Wilmington, DE  19808<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| David R. Bennett<br>DIRECTION IP LAW<br>P.O. Box 14184<br>Chicago, IL 60614-0184<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Andrew M. Moshos*
_____
Andrew M. Moshos (#6685)